

**NORTHERN DISTRICT OF TEXAS**
**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed November 18, 2005

United States Bankruptcy Judge

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KEVIN EDWARD BLAIR | § | Case No. 05-35922-HDH-7 |
| AND SUSAN ROBIN BLAIR | § | |
| | § | |
| Debtors | § | |

### MEMORANDUM OPINION ON OBJECTION TO
### DEBTORS' EXEMPTION OF INTEREST IN HOMESTEAD

Kevin Edward Blair and Susan Robin Blair ("Debtors") filed a voluntary Chapter 7 petition and elected the Texas exemptions, including the generous homestead exemption. An unsecured creditor, Southwest Security Bank ("SSB"), filed its Objection to the Debtors' Claim of Exemption in the Homestead ("Objection"). At issue in the contested matter is § 522(p) of the Bankruptcy Code, which provides that a debtor who has elected state law exemptions may not exempt any amount of interest that exceeds $125,000 in value in the debtor's homestead that was

acquired by the debtor within 1215 days preceding the petition.[1] After consideration, the Court finds the Debtors are entitled to the full, uncapped, exemption made in their schedules.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. The matter is core, pursuant to 28 U.S.C. § 157(b)(2)(A), (B) & (O). This Memorandum Opinion constitutes findings of fact and conclusions of law, pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

**I.     FACTS**

On May 27, 2005 (the "Petition Date"), the Debtors filed for protection under Chapter 7 of the United States Bankruptcy Code. On July 18, 2000, 1773 days prior to the Petition Date, the Debtors purchased their homestead property at 3316 Marquette Street, University Park, Texas (the "Homestead"). On the Debtors' Schedule C—Property Claimed as Exempt, the equity in the Homestead is valued at $688,606. On August 17, 2005, SSB timely filed its Objection to the exemption claimed as "any and all interest that the Debtors acquired between January 27, 2002 (1215 days prior to the Petition Date) and the Petition Date which exceeds $125,000" citing 11 U.S.C. § 522(p). *See* Objection at ¶ 5.

**II.    ISSUE**

This case requires the interpretation of a new provision of the Bankruptcy Code, section 522(p), created by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA"). The Court must determine whether a debtor, who acquired title and fee to real property outside of the 1215 day period prior to the Petition Date, but continued to make regular

---

[1] *See* 11 U.S.C. § 522(p) (2005). The Bankruptcy Code references are to the provisions as amended or added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

payments and build equity in the property during the 1215 day period, are subject to the $125,000.00 cap on their homestead exemption provided in section 522(p).

## III. ANALYSIS

*Statutory Provisions*

Section 522 of the Bankruptcy Code allows debtors to select either state or federal exemptions to exempt property from the bankruptcy estate. *See generally* 11 U.S.C. § 522. The majority of states have chosen the "opt-out" provision in § 522(b) forcing the debtor to utilize state exemptions. But Texas allows debtors to choose between federal and state exemptions.[2] Most debtors in Texas prefer to use the state exemptions because Texas provides for an unlimited homestead exemption. 11 U.S.C. § 522(b)(2)(A),

The recently enacted BAPCPA made specific changes to section 522.[3] New section 522(p) provides in pertinent part:

> (1) Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000 in value in—
>
>   (A)    real or personal property that the debtor or a dependent of the debtor uses as a residence;
>   (B)    a cooperative that owns the property that the debtor or a dependent of the debtor uses as a residence;
>   (C)    a burial plot for the debtor or a dependent of the debtor; or
>   (D)    real or personal property that the debtor or dependent of the debtor claims as a homestead.

11 U.S.C. § 522(p).

---

[2] Now 11 U.S.C. § 522(b)(2), as amended by the BAPCPA.

[3] The Bankruptcy Abuse Prevention and Consumer Protection Act was signed into law on April 20, 2005 and goes into effect on October 17, 2005. However, certain changes, such as Section 522(p) became effective immediately.

On its face, the statutory language is unambiguous in stating that a homestead cap of $125,000 is imposed for those debtors who elect to use state law exemptions for any interest acquired during the statutory period.[4] However, the term "interest", which must be acquired by the debtors during the 1215-day period to trigger the new homestead cap. SSB argues the Debtors' equity in the homestead is in excess of $125,000 and the increase in the equity position in the house during the 1215 period above $125,000 is subject to this statutory cap and not exempt. *See* Objection ¶¶ 4-5.

However, one does not actually "acquire" equity in a home. One acquires title to a home. The Debtors acquired title and fee to their home in early 2000, about five years before Congress passed the BAPCPA, and two and half years prior to the start of the 1215 day period applicable to their bankruptcy case. *See* Deed of Trust listed as Exhibit A in the Debtor's Response to Southwest Securities Bank's Objection to Debtor's Exemption of Interest in Homestead. The "interest" the Debtors acquired was the actual purchase of the home, which was completed well before the 1215-day period. Thus, the "interest" held by the debtors in their homestead is outside the 1215-day period and not subject to the $125,000 cap. This interpretation is consistent with other courts considering the applicability of section 522(p). *See In re Virissimo*, 332 B.R. 201, 207 (Bankr. D. Nev. 2005) ("The monetary cap applies if the debtor acquired such property

---

[4] Whether or not an "election" is made by using an "opt-out" state's exemptions is another story however. *Compare In re McNabb*, 326 B.R. 785 (Bankr. D. Ariz. 2005) (holding that the Bankruptcy Code's $125,000 homestead cap, as added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, applies only in states that have not chosen to "opt out"); *with In re Wayrynen*, 332 B.R. 479, 2005 WL 2756059 (Bankr. S.D. Fla. 2005) (holding that based on the fact that statutes should not be interpreted to reach an absurd result and the intent of the drafters, the "as a result of electing" language in § 522(p) could not be interpreted so as to limit this homestead cap only to debtors who reside in states that have not opted out of federal bankruptcy exemptions); *accord,* In re *Virissimo*, 332 B.R. 201 (Bankr. D. Nev. 2005) (holding that debtors in all states must make the election in § 522(b)(1), only the effect of the election is limited in "opt-out" states—if there is an ambiguity in the statute, the clear intent of the drafters was that the cap apply to all debtors); *In re Kaplan*, 331 B.R. 483, (Bankr. S.D. Fla.2005) (criticizing the decision in *McNabb* holding that the new language is ambiguous, the congressional intent is clear, and "[t]o arrive at [the conclusion that the cap is limited to the states of Minnesota and Texas] based on the strained and convoluted use of statutory interpretation in the face of this unambiguous legislative intent is simply wrong").

within the 1,215-day period preceding the filing of the petition."); *In re Wayrynen*, 332 B.R. 479, 483 (Bankr. S.D. Fla. 2005) ("[T]he $125,000 limitation as to the value of a home acquired by a debtor within 1215 days of the debtor's bankruptcy filing."); *In re McNabb*, 326 B.R. 785, 788 (Bankr. D. Ariz. 2005) ("Code § 522(p), as added by BAPCPA, applies a $125,000 cap on a homestead if it was acquired by the debtor within 1215 days prepetition"). This is also the interpretation reached by commentators. *See* 4 COLLIER ON BANKRUPTCY ¶ 522.13[2] (Lawrence P. King ed., 15th ed. rev. 2005); *see also* Roger S. Cox, Sanders Baker, Asset Protection & Exemptions Under the New Act, presented at the University of Texas School of Law 24th Annual Bankruptcy Conference, November 10-11, 2005.

Other parts of section 522 related subsections support this construction. *See* 11 U.S.C. § 522(d)(1)-(6). This interpretation is also consistent with the companion provision in section 522(p) added by the BAPCPA. Section 522(p)(2)(B) allows for an exception to the homestead cap. "Any amount of such interest does not include any interest transferred from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215-day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State." *See* 11 U.S.C. § 522(p)(2)(B).

Essentially, this subsection allows for rollover by debtors of the equity in one home to another home located in the same state. A debtor is not subject to the homestead cap if he takes the proceeds of his first residence and reinvests them in a second residence even within the prescribed period of section 522(p). The bank's reading of the statute would seem at odds with this provision. If debtors had sold their home during the 1215 day period and bought another they would be protected. Surely the non-selling debtors should enjoy the same protections.

*Legislative History Also Helps*

Only if the statutory language is ambiguous should the Court attempt to construe the statutory language. *Blum v. Stenson,* 465 U.S. 886, 896 (1984). "All laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with legislative purpose." *United States v. Katz*, 271 U.S. 354, 357 (1926). As mentioned above, the statute is reasonably clear in its application to real property acquired within the statutory period. However, in this instance, even if the term "interest" in Section 522(p) is sufficiently ambiguous to warrant inquiry into the legislative history, Debtors would still prevail.

The legislative comments state that the amended Section 522(p) restricts the "mansion loophole." HR Rep. 109-31(I), 109th Cong., 1st Sess. 2005, 2005 WL 832198 *15-16 (2005). Congress briefly explains:

> Under current bankruptcy law, debtors living in certain states can shield from their creditors virtually all of the equity in their homes. In light of this, some debtors actually relocate to these states just to take advantage of their mansion loophole laws. S.256 [BAPCPA] closes this loophole for abuse by requiring a debtor to be a domiciliary in the state for at least two years before he or she can claim that state's homestead exemption; the current requirement can be as little as 91 days.

*Id*. "A footnote (# 72) in this legislative history further explains that: If the debtor owns the homestead for less than 40 months, the provision imposes a $125,000 homestead cap. In effect, this provision overrides state exemption law authorizing a homestead exemption in excess of this amount and allows such law to control if it authorizes a homestead exemption in a lesser amount." *Virissimo*, 332 B.R. at 207.

Essentially, while the language of the statute is broader, one purpose was to prevent out of state residents from moving to certain states in order to file for bankruptcy under more advantageous state homestead exemption laws. This is not the case at hand.

## IV. CONCLUSION

The Court determines that the increase in the value of the equity in the debtors' homestead, which was acquired over 1215 days prior to the Petition Date, is not subject to the $125,000 cap in section 522(p).

The Court will enter a separate order consistent with this decision.

### ###End of Opinion###